# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

    Case No. 12-10232-01-EFM

DLANEY M. NIXON,

    *Defendant.*

## MEMORANDUM AND ORDER

In 2013, Defendant Dlaney Nixon entered a conditional plea of guilty to one count of armed bank robbery. He was sentenced to 140 months in prison. This matter is before the Court on Nixon's motion to vacate sentence pursuant to 28 U.S.C. § 2255, his amended motion to vacate, and the Government's motion to dismiss. Nixon argues that his sentence should be vacated or reduced in light of the U.S. Supreme Court decision *Johnson v. United States*,[1] which found the "residual clause" of the Armed Career Criminal Act ("ACCA") to be unconstitutionally vague. The Court has carefully reviewed the briefs and the record, including the Presentence Investigation Report ("PSR"). Because the record conclusively shows that Nixon is not entitled to relief, the Court denies Nixon's motion to vacate (Doc. 199), dismisses

---

[1] 135 S. Ct. 2551 (2015).

Nixon's amended motion to vacate for lack of jurisdiction (Doc. 206), and grants the Government's motion to dismiss (Doc. 207).

## I.     Factual and Procedural Background

On June 19, 2013, Nixon entered a plea of guilty to one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d).  Prior to sentencing, the U.S. Probation Office prepared a PSR, which provided that Nixon was to be held accountable for unlawfully taking U.S. currency from Intrust Bank in Valley Center, Kansas.  The PSR applied an enhancement under U.S.S.G. § 4B1.1 ("Chapter Four enhancement") because the instant offense of conviction was a "crime of violence" and the defendant had two prior felony convictions of a "crime of violence.[2]  The Chapter Four enhancement set the offense level at 34.  Nixon's offense level was then reduced by three levels for accepting responsibility for the offense.  Accordingly, Nixon's total offense level was calculated to be 31.

The PSR noted that the maximum term of imprisonment for violating 18 U.S.C. § 2113 was 25 years imprisonment.  Based upon a total offense level of 31 and a criminal history category of VI, the guideline imprisonment range under the Sentencing Guidelines was 188 to 235 months.  Then, on September 6, 2013, the Court sentenced Nixon to 140 months imprisonment, to be followed by four years of supervised release.  Nixon did not file a direct appeal.

On July 5, 2016, Nixon filed a motion to vacate under 28 U.S.C. § 2255.  In the motion, Nixon primarily argued that he no longer qualifies as a career offender under U.S.S.G. § 4B1.2

---

[2] Under U.S.S.G. § 4B1.1 (2012), a defendant is a "career offender" if (1) the defendant was at least eighteen years old at the time he committed the instant offense; (2) the instant offense is a felony that is a "crime of violence"; and (3) the defendant has at least two prior felony convictions of a "crime of violence."  Here, the U.S. Probation Office determined that Nixon was a career offender because the instant offense (armed bank robbery) and two prior felony convictions (Kansas residential burglary) qualified as "crimes of violence."

in the wake of the U.S. Supreme Court's decision in *Johnson*, given that his Kansas residential burglary convictions no longer serve as predicate "crimes of violence" under the sentencing guidelines. Shortly thereafter, the Court ordered a stay in the proceedings while the Supreme Court decided *Beckles v. United States*.[3]

*Beckles* was decided on March 6, 2017. On March 23, 2017, Nixon filed an amended § 2255 motion (Doc. 206), arguing that he is still entitled to relief despite the outcome of *Beckles*. The following day, the Government filed a motion to dismiss Nixon's original motion to vacate (Doc. 207).

## II.     Discussion

In his initial motion to vacate, Nixon argues that his sentence should be reduced because he received a Chapter Four enhancement, which he contends is unconstitutional in light of *Johnson* and *United States v. Madrid*.[4] And in his amended motion to vacate, Nixon brings two new arguments that were not raised in his initial motion to vacate. First, he "claims ineffective assistance of counsel, because [he] never qualified for the career offender enhancement." Second, he claims that the Federal Bureau of Prisons ("BOP") "frustrated and impeded [his] ability to research, find and present his 'never qualified' theory to the Court before the expiration of the one-year limitation imposed by the Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"). The Court will first explain *Johnson* and *Beckles*, before addressing each of Nixon's motions in turn.

---

[3] 137 S. Ct. 886 (2017).

[4] 805 F.3d 1204 (10th Cir. 2015).

A.      *Johnson v. United States*

Nixon's argument is based upon *Johnson*, in which the Supreme Court held that certain language in the ACCA violated "the Constitution's prohibition of vague criminal laws."[5]  To understand the *Johnson* decision, some background information may be helpful.

Federal law prohibits convicted felons from shipping, possessing, and receiving firearms.[6]  In general, the ACCA punishes violation of this ban by a prison sentence of "not more than 10 years."[7]  But the ACCA imposes a minimum sentence of fifteen years if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony."[8]  A "violent felony" was defined in the ACCA as follows:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.[9]

The closing words of this definition, italicized above, are known as the "residual clause" of the ACCA.[10]

In *Johnson*, the Supreme Court struck down the language of the residual clause as unconstitutionally vague because "[i]nvoking so shapeless a provision to condemn someone to

---

[5] *Johnson*, 135 S. Ct. at 2555.

[6] *See* 18 U.S.C. § 922(g).

[7] 18 U.S.C. § 924(a)(2).

[8] 18 U.S.C. § 924(e)(1).

[9] 18 U.S.C. § 924(e)(2)(B) (emphasis added).

[10] *Johnson*, 135 S. Ct. at 2556.

prison for 15 years to life does not comport with the Constitution's guarantee of due process."[11] The Supreme Court reasoned: "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges."[12]

In simpler terms, the "text of the residual clause provides little guidance on how to determine whether a given offense involves conduct that presents a serious potential risk of physical injury."[13] Thus, the residual clause was unconstitutional under the void-for-vagueness doctrine, which "prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.' "[14]

**B.     *Johnson* Does Not Apply to the Sentencing Guidelines**

While the *Johnson* holding only struck down the residual clause of the ACCA, some courts, including the Tenth Circuit, initially applied the *Johnson* Court's rationale to the career offender guideline of the Sentencing Guidelines.[15] The Sentencing Guidelines recommend sentencing ranges based on a defendant's conduct and characteristics. During sentencing, the District Court first calculates the sentencing range recommended by the Guidelines, and then chooses a sentence to impose. "[C]ourts are . . . required to consider the Guidelines in

---

[11] *Id*. at 2560.

[12] *Id.* at 2557.

[13] *Welch v. United States*, 136 S. Ct. 1257, 1261 (2016) (quotations omitted).

[14] *Id.* (quoting *Johnson*, 135 S. Ct. at 2556).

[15] *See, e.g.*, *United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015) (applying *Johnson* to the residual clause of the definition of a "crime of violence" under the career offender guideline because that clause is nearly identical to the clause struck down by the Court in *Johnson*), *abrogated by Beckles v. United States*, 137 S. Ct. 886 (2017).

determining sentences, but they are not required to impose a sentence within the Guidelines range."[16]

In calculating a guideline sentence range, a defendant's recommended sentencing range is increased if the defendant qualifies as a "career offender."[17] The Guidelines define a career offender as someone who, among other things, has "at least two prior felony convictions of . . . a crime of violence."[18] A "crime of violence" is defined in § 4B1.2(a) of the Guidelines. The Guidelines definition of "crime of violence" was amended in 2016, but prior to that was defined as:

> (a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.[19]

The final clause in § 4B1.2(a), italicized above, is also known as the "residual clause." A quick comparison shows that the residual clause of the pre-2016 Guidelines used precisely the same language as the ACCA's residual clause.[20]

---

[16] *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005).

[17] U.S.S.G. § 4B1.1.

[18] *Id.*

[19] U.S.S.G. § 4B1.2 (2012).

[20] U.S.S.G. § 4B1.2 (2012). *Compare id.* (". . . or otherwise involves conduct that presents a serious potential risk of physical injury to another.") *with* 18 U.S.C. § 924(e)(2)(B) (". . . or otherwise involves conduct that presents a serious potential risk of physical injury to another.").
  As can be seen, the phrase "crime of violence" encompasses three distinct categories. The first, found in § 4B1.2(a)(1) is commonly referred to as the "elements clause." The second, broadly defined to include any offense that "is burglary of a dwelling, arson, or extortion, [or] involves the use of explosives" is commonly referred to as

In *United States v. Madrid*,[21] the Tenth Circuit, sharing the same "concerns about judicial inconsistency that motivated the [Supreme Court] in *Johnson*," held that the residual clause of the Guidelines was unconstitutionally vague.[22] In reaching this decision, the Court noted its analysis was not changed by the fact "[t]hat the Guidelines are advisory, and not statutory."[23] Thus, under *Madrid* (before the decision was abrogated by the Supreme Court), a prisoner could be entitled to resentencing if the prisoner's sentence was enhanced because of the Guidelines' residual clause.

However, this avenue of relief was very narrow. A prisoner would not be entitled to relief if the prisoner's "career offender" enhancement could still be supported without considering the Guidelines' residual clause. In other words, a "career offender" enhancement was still valid if the offender had at least two prior felony convictions that qualified as "crimes of violence" under the elements clause or the enumerated offense clause.[24]

Not only was the relief afforded under *Madrid* only available to a relatively narrow class of prisoners, but the decision was short-lived. It was abrogated by the Supreme Court on March 6, 2017, when the Supreme Court decided *Beckles*. In *Beckles*, the Court considered whether the Guidelines' residual clause is also void for vagueness. But the Court concluded that "the Guidelines are not subject to a vagueness challenge under the Due Process Clause."[25] The Court

---

the "enumerated offense clause." U.S.S.G. § 4B1.2(a)(2) (2015). The second half of § 4B1.2(a)(2), italicized above, is known as the "residual clause."

[21] 805 F.3d 1204 (10th Cir. 2015).

[22] *Id.* at 1210–11.

[23] *Id.* at 1211.

[24] *See Madrid*, 805 F.3d at 1207.

[25] *Beckles*, 137 S. Ct. at 892.

explained that the advisory Guidelines "do not fix the permissible range of sentences" but "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range."[26] Accordingly, the Guidelines' residual clause is not void for vagueness.

## C. Nixon's Motion to Vacate is Denied

A prisoner may make an initial post-conviction claim for relief within one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."[27] But the right Nixon is asserting has not been recognized by the Supreme Court, and has not been made retroactively applicable to cases on collateral review. Nixon asserts that the residual clause contained in § 4B1.2(a)'s definition of "crime of violence" is unconstitutionally vague under *Johnson* and, accordingly, that his prior residential burglary convictions no longer qualify as "crimes of violence" for purposes of the Chapter Four enhancement he received. While this argument could potentially have been successful under *Madrid*, the Supreme Court abrogated that decision and explicitly held that "the Guidelines are not subject to a vagueness challenge."[28] Accordingly, *Beckles* forecloses Nixon's claim for relief.

## D. Nixon's Amended Motion to Vacate is Dismissed for Lack of Jurisdiction

### 1. The Amended Motion to Vacate is a Second or Successive § 2255 Motion

Shortly after *Beckles* was decided, but before the Court had an opportunity to rule on Nixon's motion to vacate, Nixon filed an amended motion to vacate. In his amended motion,

---

[26] *Id.*

[27] 28 U.S.C. § 2255(f)(3).

[28] *Beckles*, 137 S. Ct. at 892.

Nixon conceded that *Beckles* foreclosed his initial claim for relief. Nevertheless, Nixon persisted. He now brings a new theory—nearly three years after sentencing—that the Chapter Four enhancement should not have been applied because residential burglary does not qualify as a "crime of violence" under the Guidelines' enumerated offense clause.[29] Additionally, he blames his failure to bring this claim within AEDPA's one-year statute of limitations period on ineffective assistance of counsel, and the BOP's insufficient law library. According to Nixon, he did not appeal his sentence within one year on the advice of counsel. Despite this setback, he maintains that he would have discovered the error in time if the BOP had provided him with an adequate law library.

However, because Nixon already has one Section 2255 motion to his name, his new filing must clear the jurisdictional hurdle imposed by the AEDPA. That statute provides that a District Court may not entertain a "second or successive" motion filed by a federal prisoner unless the prisoner has first obtained authorization to file from the court of appeals.[30] Nixon did not ask the Tenth Circuit for its permission to file his motion, and so if it qualifies as "successive," this Court lacks jurisdiction to adjudicate it.[31]

"After a federal prisoner has filed one postjudgment habeas petition, which is permitted under 28 U.S.C. § 2255(a), another postjudgment motion is treated as a second or successive

---

[29] Even if this were true, Nixon failed to explain why residential burglary did not qualify as a "crime of violence" under the other two clauses found in U.S.S.G. § 4B1.2(a): the elements clause, and, lest we forget, the residual clause.

[30] 28 U.S.C. §§ 2244(a), 2255(h).

[31] *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008) (per curiam) (holding that district court has no jurisdiction to decide unauthorized second or successive § 2255 claims).

§ 2255 motion if it asserts or reasserts claims of error in the prisoner's conviction."[32] However, not every petition "filed second or successively in time" to a prior petition counts as "second or successive," "even when the later filings address a . . . judgment already challenged" in a prior application.[33] To discern whether a postjudgment motion is, in fact, a successive § 2255 motion, the Court must "look at the relief sought, rather than a pleading's title or its form."[34] If a petitioner challenges his underlying sentence or conviction, his filing is a successive § 2255 motion.[35] In contrast, if the motion "seeks to correct an error in the previously conducted [§ 2255] proceeding itself," it is not characterized as a successive motion.[36] "The distinction is important because § 2255(h) deprives a district court of jurisdiction over uncertified second or successive habeas petitions."[37]

Here, Nixon's amended motion to vacate falls squarely within the definition of a second or successive petition. His initial § 2255 motion challenged his sentence under the assumption that the Guidelines' residual clause definition of "crime of violence" is unconstitutionally vague under *Johnson* and, accordingly, that his prior residential burglary convictions no longer qualify as "crimes of violence" for purposes of the Chapter Four enhancement he received. When this argument was rejected in *Beckles*, Nixon challenged his sentence under a different theory,

---

[32] *United States v. Williams*, 790 F.3d 1059, 1067 (10th Cir. 2015) (citing *United States v. Nelson*, 465 F.3d 1145, 1147 (10th Cir. 2006); *Gonzalez v. Crosby*, 545 U.S. 524, 530–31 (2005)).

[33] *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)

[34] *United States v. Baker*, 718 F.3d 1204, 1206–08 (10th Cir. 2013).

[35] *See Williams*, 790 F.3d at 1068 (explaining that challenge to underlying conviction constitutes a successive motion); *Reed v. Peterson*, 31 F. App'x 629, 629–30 (10th Cir. 2002) (dismissing challenge of application of Sentencing Guidelines as an improper second or successive motion to vacate, set aside, or correct sentence).

[36] *United States v. Nelson*, 465 F.3d 1145, 1147 (10th Cir. 2006).

[37] *Williams*, 790 F.3d at 1068.

arguing that his prior burglary convictions did not qualify as "crimes of violence" under the Guidelines' elements clause and the Chapter Four enhancement was therefore applied in error.

Accordingly, Nixon's amended motion to vacate is not one that "seeks to correct an error in the previously conducted [§ 2255] proceeding itself."[38] Nixon has simply abandoned his first legal theory, and adopted a new one to challenge his sentence. His amended motion to vacate is therefore a successive § 2255 motion, and this Court does "not even have jurisdiction to deny the relief sought in the pleading" in absence of a certification from the Tenth Circuit.[39]

Of course, Nixon's amended motion would not be considered a successive § 2255 motion if it "related back" to his initial motion. In *United States v. Espinoza-Saenz*,[40] the Tenth Circuit addressed whether under Rule 15(c), an untimely amendment to a § 2255 motion could relate back to the date of the original, timely filed § 2255 motion.[41] The Tenth Circuit held that such an amendment may, in the District Court's discretion, relate back if it "does not seek to add a new claim or to insert a new theory into the case."[42] But if the new motion seeks to assert claims totally separate and distinct, "in both time and type" from those raised in the original motion, the amendment will not relate back to the original.[43]

In this case, Nixon's amended motion to vacate asserts new claims totally separate and distinct, in both time and type from those raised in his original motion. In his original motion,

---

[38] *Nelson*, 465 F.3d at 1147.

[39] *Id.*

[40] 235 F.3d 501 (10th Cir. 2000).

[41] *Id.* at 504–05.

[42] *Id.* at 505.

[43] *Id.*

Nixon argued that the Chapter Four enhancement was unconstitutional under *Johnson*. Conceding that this argument fails in light of *Beckles*, Nixon now argues that the Chapter Four enhancement should not have been applied because residential burglary does not qualify as a "crime of violence." Without addressing the merits of this argument, it is clear that these new claims are separate and distinct, in both time and type from his initial *Johnson* claim. Accordingly, the amended motion to vacate does not relate back to his initial motion, and it still qualifies as a second or successive motion.

### 2. *The Amended Motion to Vacate is Dismissed for Lack of Jurisdiction*

Because the amended motion to vacate is a second or successive motion under § 2255, the authorization requirements of § 2255(h) are triggered.[44] Nixon did not obtain the requisite authorization from the Tenth Circuit before filing, so the Court must determine whether it is in the interest of justice to transfer his claims to the Tenth Circuit under § 1631 or dismiss the motion for lack of jurisdiction.[45] The Tenth Circuit has advised that "[w]here there is no risk that a meritorious successive claim will be lost absent a § 1631 transfer, a district court does not abuse its discretion if it concludes that it is not in the interest of justice to transfer the matter" to the Tenth Circuit for authorization.[46]

"The phrase 'if it is in the interest of justice' has been interpreted to grant the district court the discretion in making the decision whether to transfer an action or, instead, to dismiss the action."[47] Factors to consider in deciding whether to transfer or dismiss include "whether the

---

[44] *United States v. Weeden*, 2017 WL 3215679, at *1 (D. Kan. 2017).

[45] *In re Cline*, 531 F.3d at 1252.

[46] *Id.*

[47] *Weeden*, 2017 WL 3215679, at *2 (citing *In re Cline*, 531 F.3d at 1252–53).

claims would have been time-barred if filed anew in the proper forum, whether the claims alleged are likely to have merit, and whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction."[48] A prisoner who wishes to file a successive § 2255 motion has the burden of showing that he satisfies one of two conditions: either (1) the existence of newly discovered evidence; or (2) the existence of a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.[49]

Nixon claims that he is entitled to relief because he was unable to obtain a copy of the Kansas burglary statute until July 16, 2016, when he received a copy from an outside source. "When claiming newly discovered evidence, the petitioner must show that due diligence on his part could not have revealed the evidence prior to trial and that the evidence would have likely led to a different result."[50] Nixon has failed to do so. The only "evidence" he offers is a list of "required main law library materials" for BOP facilities. Although the Kansas criminal statutes are not listed, Nixon offers no explanation as to why he could not have discovered the Kansas burglary statute—of which he was convicted under, twice—before he was sentenced for bank robbery. Nixon cannot rely on this theory in a successive § 2255 motion filed more than three years after the judgment in his criminal case became final. Nixon's motion is therefore untimely.

Accordingly, Nixon's motion does not meet the requirements for second or successive § 2255 motions, and the Court dismisses the amended motion to vacate for lack of jurisdiction rather than transferring to the Tenth Circuit.

---

[48] *Id.* (citing *In re Cline*, 531 F.3d at 1252).

[49] *United States v. Harper*, 545 F.3d 1230, 1232 n.12 (10th Cir. 2008) (citing 28 U.S.C. § 2255(h)).

[50] *Klein v. United States*, 880 F.2d 250, 253–54 (10th Cir. 1989) (quotations omitted).

E.  **Certificate of Appealability**

As a final matter, under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.[51] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[52] For the reasons stated above, the Court finds that Nixon has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on these motions.

### III.  Conclusion

With respect to Nixon's motion to vacate, *Beckles* foreclosed Nixon's claim for relief, and the motion is therefore denied. Next, Nixon's amended motion to vacate must be construed as a second or successive petition governed by § 2255(h) of AEDPA. Under § 2255(h), Nixon was prohibited from filing a second or successive petition without first obtaining certification from the Tenth Circuit, which he failed to do. Accordingly, the Court lacks jurisdiction to consider the motion and it is dismissed.

**IT IS THEREFORE ORDERED** that Nixon's Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 199) is **DENIED.**

**IT IS FURTHER ORDERED** that Nixon's Amended Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 206) is **DISMISSED.**

---

[51] 28 U.S.C. § 2253(c)(2).

[52] *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).

**IT IS FURTHER ORDERED** that the Government's Motion to Dismiss Complaint (Doc. 207) is **GRANTED.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability Under Rule 11 is **DENIED.**

**IT IS SO ORDERED**.

Dated this 27th day of September, 2017.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE