## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>vs.<br><br>DLANEY M. NIXON,<br><br>*Defendant.* | Case No. 12-10232-01-EFM |

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion for Compassionate Release (Doc. 213) and Motion to Reduce Sentence (Doc. 215). He seeks early release from prison due to having underlying health conditions that make him susceptible to contracting COVID-19. The government opposes Defendant's motions. For the reasons stated in more detail below, the Court denies Defendant's motions.

### I.      Factual and Procedural Background

On June 19, 2013, Defendant pleaded guilty without a plea agreement to one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). On September 4, 2013, Defendant was sentenced to 140 months imprisonment. He is currently incarcerated at Milan FCI. Defendant's projected release date is September 9, 2023.

On June 22, 2020, Defendant filed a motion seeking early release due to the risk of contracting COVID-19 in prison. District of Kansas Standing Order 19-1 appoints the Federal Public Defender ("FPD") to represent indigent defendants who may qualify to seek compassionate release under § 603 of the First Step Act. Administrative Order 20-8 supplements 19-1 and sets forth procedures to address compassionate release motions brought on grounds related to the COVID-19 pandemic. Pursuant to Standing Order 20-8, the FPD entered its appearance on behalf of Defendant and filed an additional motion seeking to reduce Defendant's sentence.

Defendant contends that his hypertension puts him at high risk of serious health complications should he contract COVID. In addition, Defendant asserts that he has served over two-thirds of his sentence, and 18 U.S.C. § 3553(a) factors support his release. The government opposes the motion.

## II.     Legal Standard

The First Step Act amended the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), to allow a defendant to file his own motion for release.[1] It allows defendants to seek early release from prison provided certain conditions are met. First, "a criminal defendant may file a motion for compassionate release only if: '(1) he has exhausted all administrative rights to appeal the [Bureau of Prisons ("BOP")] failure to bring a motion on his behalf, or (2) 30 days have passed since the warden of his facility received his request for the BOP to file a motion on his behalf.' "[2] The administrative exhaustion requirement is jurisdictional and cannot be waived.[3]

---

[1] *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[2] *United States v. Boyles*, 2020 WL 1819887, at *2 (D. Kan. 2020) (citing *United States v. Alam*, 2020 WL 1703881, at *2 (E.D. Mich. 2020)); *see also* 18 U.S.C. § 3582(c)(1)(A).

[3] *See United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence); *United States v. Read-Forbes*, --- F. Supp. 3d

Next, if a defendant satisfies the exhaustion requirement, the Court may reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the Court determines: (1) "extraordinary and compelling reasons warrant such a reduction;" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[4] Finally, the Court must ensure that any reduction in Defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[5]

### III.   Analysis

Defendant seeks early release asserting that his medical condition of hypertension places him at high risk for serious illness or death should he contract COVID-19 in prison. He also states that he has served over two-thirds of his prison sentence, and § 3553(a) factors support his release. The government disagrees and contends that Defendant is not an appropriate candidate for early release.

**A.   Exhaustion**

---

---, 2020 WL 1888856, at *3–4 (D. Kan. 2020) (examining the text, context, and historical treatment of § 3582(c)'s subsections to determine that the exhaustion requirement is jurisdictional); *Boyles*, 2020 WL 1819887, at *2 (determining that exhaustion of administrative remedies is a prerequisite for the court's jurisdiction); *cf. United States v. Younger*, 2020 WL 3429490, at *3 (D. Kan. 2020) (reasoning that the Sixth Circuit's approach articulated in *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), is "highly persuasive," and concluding that § 3582(c)(1)(A)'s exhaustion requirement is a claims-processing rule).

[4] 18 U.S.C. § 3582(c)(1)(A)(i)-(ii).

[5] *Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding that the Sentencing Commission's policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

Defendant has satisfied the exhaustion requirement described in § 3582(c). Defendant's counsel submitted a written request on behalf of Defendant to the Warden of FCI Milan on June 16, 2020. More than 30 days have passed since Defendant requested compassionate release from the Warden, and accordingly, this Court has jurisdiction to decide his motion.

**B.      Extraordinary and Compelling Reasons**

Next, Defendant argues that his hypertension coupled with the outbreak of COVID-19 in FCI Milan constitutes an extraordinary and compelling reason warranting a sentence reduction under § 3582(c)(1)(A). Although the Court is sympathetic to Defendant's concerns and recognizes that Defendant's risk of contracting COVID-19 may be higher due to his underlying health condition, he does not show a relatively high risk.

The Sentencing Commission's policy statement pertaining to sentence reduction under § 3852(c)(1)(A) is found at United States Sentencing Guidelines § 1B1.13. Certain medical conditions constitute "extraordinary and compelling reasons" warranting reduction. These include if the defendant "is suffering from a terminal illness" or "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."[6] Here, these conditions are not present.

The Court recognizes that the Center for Disease Control and Prevention ("CDC") states that individuals with hypertension "might be at an increased risk for severe illness from COVID-19."[7] Several courts have noted, however, that there are different types of hypertension, and the

---

[6] U.S.S.G. § 1B1.13 cmt. n.1(A)(i)-(ii).

[7] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

riskier hypertension with COVID-19 is pulmonary rather than essential.[8]  Defendant's medical records indicate that he has essential hypertension.[9]

Furthermore, although the Court recognizes the concerns and risks of COVID-19, the mere presence of COVID-19, or its combination with Defendant's hypertension, does not constitute an extraordinary and compelling reason warranting release.[10]  In Defendant's case, there is no widespread outbreak at the facility in which Defendant is housed.  Indeed, although Milan FCI has tested 384 inmates for COVID-19, and 83 have tested positive, there is only one active inmate case.[11] The BOP has also implemented procedures to minimize the risk.[12]  Finally, the Court notes that Defendant is a relatively younger individual as he is 31 years old.  Thus, Defendant's hypertension does not qualify as a medical condition as it is not terminal and does not substantially diminish his ability to care for himself.  Accordingly, Defendant does not meet his burden in demonstrating extraordinary and compelling circumstances warranting compassionate release.

---

conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited September 14, 2020).

[8] *See United States v. Thomas*, --- F. Supp. 3d ---, 2020 WL 3895781, at *4 (W.D. Va. 2020) (collecting cases and noting the difference between pulmonary hypertension and essential hypertension).

[9] The Court notes that the Department of Justice has identified certain risk factors, consistent with the CDC, that place inmates at higher risk of complications from COVID-19. Those inmates that present with one of the named CDC factors, and who is not expected to recover from that condition, will have established an extraordinary and compelling reason allowing for compassionate release. *See* Doc. 218 at 13. A serious heart condition, including pulmonary hypertension, is one of those risk factors. *Id.* at n. 6. Essential hypertension is not.

[10] *See United States v. Hill*, 2020 WL 5104477, at *2 (N.D. Ohio 2020) (joining with "other district courts that have found that hypertension and COVID-19 do not qualify as extraordinary and compelling reasons for compassionate release.") (collecting cases).  The Court recognizes that other courts have allowed release when the defendant suffered from hypertension, but generally, these defendants also suffered from additional medical ailments. *See Thomas*, 2020 WL 3895781, at *3 (collecting cases in which courts released individuals suffering from hypertension and other ailments).

[11] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited September 14, 2020).  12 tests remain pending at this time. One staff member is also positive.

[12] The Court recognizes that these procedures may not work at all times, or in all facilities, but there is no indication that they are not working where Defendant is currently incarcerated.

## C.    Section 3553(a) Factors

The Court's conclusion is bolstered by its consideration of the applicable sentencing factors enumerated in 18 U.S.C. § 3553(a).[13] Some of these factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentence disparities.[14]

Defendant pleaded guilty to the serious offense of armed bank robbery.  The sentencing guideline range was 188 to 235 months based on Defendant's career offender status.  The Court, however, expressed skepticism about Defendant's career offender status and ultimately departed downward and sentenced Defendant to 140 months.  The Court found that 140 months was appropriate based on several factors.  First, the Court noted that armed bank robbery is one of the more serious offenses.  In addition, the Court noted Defendant's prior offenses and the escalation of his criminal offenses which resulted in the crime before the Court, armed bank robbery.  Finally, the Court found that 140 months reflected the need to protect the public from further crimes of Defendant and provide adequate deterrence of future criminal conduct.

At this point, Defendant has served 82 months which is only approximately 60 percent of his sentence.  The Court remains convinced that 140 months is the appropriate sentence. Reducing Defendant's sentence to time served would not reflect the seriousness of Defendant's criminal conduct nor provide adequate deterrence or appropriate punishment.  Furthermore, as noted above, Defendant is not at relatively high risk of contracting serious COVID-19 complications based on

---

[13] 18 U.S.C. § 3582(c)(1) (stating that the court should consider the factors set forth in § 3553(a) when determining the length of imprisonment).

[14] 18 U.S.C. § 3553(a).

his medical condition of hypertension and the low number of active, positive COVID-19 cases in his facility. The Court finds that the 140-month sentence originally imposed remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense involved. Accordingly, the Court finds that Defendant does not demonstrate extraordinary and compelling reasons to warrant his early release from prison.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release (Doc. 213) and Motion to Reduce Sentence (Doc. 215) are **DENIED**.

**IT IS SO ORDERED**.

Dated this 14th day of September, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE